1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| MARIA C. RODRIGUEZ, an individual, on behalf of herself and on behalf of all persons similarly situated,<br><br>          Plaintiff,<br><br>     vs.<br><br>EL TORO MEDICAL INVESTORS LIMITED PARTNERSHIP, a Limited Partnership; LIFE CARE CENTERS OF AMERICA, INC., a Corporation; and DOES 1 through 50, inclusive,<br><br>          Defendants. | CASE NO. 8:16-cv-00059-JLS-KES<br><br>**ORDER (1) CONDITIONALLY GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CLASS NOTICE (Doc. 80); AND (2) SETTING A FINAL FAIRNESS HEARING DATE FOR JUNE 22, 2018, AT 2:30 P.M.** |

22
23
24
25
26
27
28

Before the Court is Plaintiff Maria Rodriguez's unopposed Motion for Preliminary Approval of a Class Action Settlement and Approval of Class Notice.  (Mot., Doc. 80.) Rodriguez asks the Court to (1) preliminarily approve the terms of the class action settlement; (2) certify the proposed class and collective action for settlement purposes only; (3) approve KCC Class Action Services as the settlement administrator; (4) authorize the mailing of the proposed class notice; (5) appoint Norman B. Blumenthal, Kyle R. Nordrehaug, and Aparajit Bhowmik of Blumenthal, Nordrehaug, & Bhowmik, LLP as Class Counsel; and (6) appoint Rodriguez as Class Representative.  (Mem., Doc. 80-1.) The Court finds this matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.  Accordingly, the hearing set for December 8, 2017, at 10:30 a.m., is VACATED.  Having considered the papers, the Court conditionally GRANTS Rodriguez's Motion.

## I.  **BACKGROUND**

Defendants El Toro Medical Investors Limited Partnership and Life Care Centers of America jointly employed Rodriguez as a non-exempt Licensed Practical Nurse from February 2014 to February 2015.  (FAC ¶¶ 3–4, Doc. 11.)  Prior to hiring, Defendants required all employment applicants, including Rodriguez, to sign an authorization and disclosure form consenting to a background check.  (*Id.* ¶ 8.)  This form included a liability release on the same page.  (*Id.*)  On January 15, 2016, Rodriguez filed the instant class action against Defendants.  (Compl., Doc. 1.)   On March 15, 2016, Rodriguez filed a First Amended Complaint, alleging claims for (1) failure to make proper disclosures under the federal Fair Credit Reporting Act ("FCRA"), (2) failure to obtain proper authorization under the FCRA, (3) violation of California's Unfair Competition Law, (4) failure to pay overtime in violation of Cal. Labor Code sections 510 and 1198, (5) failure to provide itemized wage statements in violation of Cal. Labor Code section 226, (6) failure to

1    provide wages when due in violation of Cal. Labor Code sections 201 through 203, and (7)

2    violation of California's Private Attorneys General Act.  (FAC ¶¶ 55–116.)

3          On August 9, 2016, Defendants filed a motion to dismiss the FCRA causes of

4    action.  (MTD, Doc. 23.)  The Court denied the motion on November 16, 2016.  (Order,

5    Doc. 50.)  The parties then engaged in informal discovery, following which they filed a

6    Joint Stipulation to dismiss the third, fourth, fifth, sixth, and seventh causes of action, all of

7    which related to wage and hour violations of the California Labor Code.  (Joint Stip. to

8    Dismiss, Doc. 63.)  The Court granted the Joint Stipulation.  (Doc. 64.)  On May 16, 2017,

9    the parties participated in a mediation presided over by Mediator David Rotman.

10   (Nordrehaug Decl. ¶ 12, Doc. 80-2.)  On August 10, 2017, Rodriguez filed a notice of

11   settlement, which was followed by the instant Motion and attached Settlement Agreement.

12   (Notice of Settlement, Doc. 78; Settlement Agreement ("SA"), Ex. 1 to Nordrehaug Decl.,

13   Doc. 80-2.)

14         The Settlement Agreement defines the "Class" as "all individuals who applied for

15   employment with any Released Party in the United States who executed a background

16   check disclosure and/or authorization form that included a liability release clause and

17   whose background check report was procured pursuant to such form."  (SA § I (D).)

18   "Released Parties" include "all Life Care owned, operated, and/or managed facilities,

19   including but not limited to Life Care Centers of America, Inc., EI Toro Medical Investors,

20   L.P. dba Lake Forest Nursing Center, Life Care Centers of America, Inc. dba Mirada Hills

21   Rehabilitation and Convalescent Hospital, Garden Grove Medical Investors Limited

22   Partnership, Vista Medical Investors Limited Partnership, and Escondido Medical

23   Investors Limited Partnership, and their present and former parent companies, present

24   owners, former owners, subsidiaries, related or affiliated companies and entities,

25   shareholders, officers, directors, employees, agents, attorneys, insurers, successors, and

26   assigns, and any individual or entity which could be jointly or severally liable with

27   Defendants, or any of them."  (*Id.* § I (V).)  The "Class Period" runs from January 15,

28

2014 through the date of preliminary approval.  (*Id.*)  The parties estimate that there are approximately 2,503 Class Members.  (Mem. at 11.)

Under the Settlement Agreement, Defendants will pay a non-reversionary maximum settlement amount ("MSA") of $675,000.00.  (SA § I(O).)  This represents approximately 27% of Defendants' maximum potential exposure under the FCRA.[1] (Nordrehaug Decl. ¶ 20.)   The following payments will be made from the MSA to arrive at the Net Settlement Amount ("NSA"): (a) up to $10,000 to Rodriguez as a class representative service payment pursuant to Court approval (SA § III(B)(1)); (b) up to one-third of the MSA ($225,000) in attorneys' fees pursuant to Court approval (*id.* § III(B)(2)); (c) reasonable costs not to exceed $20,000 pursuant to court approval (*id.*); and (d) approximately $25,000 to KCC Class Action Services for the costs of claims administration pursuant to court approval (*id.* § III(B)(3)).  The NSA will then be distributed to Participating Class Members on an equal, pro rata basis.  (*Id.* § III(C).)  Class members need not submit a claim form to be paid.  (*Id.*)

In return for the consideration described above, the Participating Class Members release:

> any and all claims, charges, causes of action, debts, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, penalties, interest, damages (including but not limited to actual damages, statutory damages, and punitive damages), restitution, injunctive relief, declaratory relief and remedies of any other type during the Class Period through the date of Preliminary Approval that were or could have been asserted in this Action based on any facts, conduct, circumstances, transactions, events, policies, procedures, occurrences, acts, disclosures, statements, omissions or failures to act that are pled or that arise out of or are related to the facts, conduct, circumstances, transactions, events, policies, procedures, occurrences, acts, disclosures, statements, omissions or failures to act, which are asserted or which could have been asserted in the First and Second causes of action of

---

[1] The estimated class is 2,503 members, and statutory damages under the FCRA range from $100 to $1,000 per violation.  Accordingly, Rodriguez's Counsel calculated Defendants' maximum potential exposure at $2.5 million.  (Nordrehaug Decl. ¶ 20.)

4

the Complaint and First Amended Complaint, including any and all claims that Plaintiff and the Participating Class Members have arising out of or relating directly or indirectly in any manner whatsoever to the facts alleged or which could have been alleged or asserted in the Complaint and First Amended Complaint relating to the First and Second causes of action, including but not limited to any and all claims under 15 U.S.C.§ 1681b(b) of the Fair Credit Reporting Act.

(*Id.* § III(F)(1).)  In addition to this release, Rodriguez herself specifically releases "all claims, known or unknown" that she may have against Defendants.  (*Id.* § III(F)(2).)

The Settlement Agreement also enumerates the process for Class Notice.  Within fifteen days following preliminary approval of the Settlement Agreement, Defendants will provide the Settlement Administrator with the following information about each Class Member: his or her name, social security number, most recent known mailing address, and most recent known telephone number.  (*Id.* §§ I(E), III(E)(2)(a).)  As soon as possible, or no later than fifteen days after receiving the Class Members' data, the Settlement Administrator will mail the Class Notice Packets to all Class Members via first-class regular mail.  (*Id.* § III(E)(2)(b).)  For any Notice Packets returned as non-delivered, the Settlement Administrator will promptly search for a more current address and re-mail the Class Notice Packet to the Class Member.  (*Id.* § III(E)(2)(c).)  Class Members who wish to object to, or exclude themselves from, the Settlement Agreement must file an objection or request for exclusion no later than forty-five days after the Notice Packet is first mailed. (*Id.* III(E)(3)(a).)

On December 4, 2017, the Court requested supplemental information related to the Settlement Agreement and Class Notice.  Specifically, the Court asked Rodriguez to clarify whether the parties agreed that class members have 45 days from the date of re-mailing to object or opt out in cases where the initial Notice Packet is returned as undeliverable but an alternative address is identified.  (Doc. 85.)  Additionally, the Court requested that Rodriguez provide a declaration from KCC Class Action Services detailing its experience in serving as a claims administrator.  (*Id.*)  On December 5, 2017, Rodriguez filed the requested information, affirming that class members for whom an alternative

address is identified have 45 days from re-mailing of the Notice Packet (Supp., Doc. 86), and providing a declaration from KCC regarding its qualifications (Morrison Decl., Doc. 68-1).

## II.    CONDITIONAL CERTIFICATION OF THE CLASS

Rodriguez asks the Court to conditionally certify the Settlement Class for settlement purposes under Rule 23(a) and 23(b)(3).  (Mem. at 16–17.)

"A party seeking class certification must satisfy the requirements of Federal Rule of Civil Procedure 23(a) and the requirements of at least one of the categories under Rule 23(b)."  *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013).  Rule 23(a) "requires a party seeking class certification to satisfy four requirements: numerosity, commonality, typicality, and adequacy of representation."  *Id.* (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011)).  Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

"Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, [s]he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."  *Dukes*, 564 U.S. at 350.  This requires a district court to

conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." *Id.* at 350–51.

"Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Id.* at 345. Here, Rodriguez seeks certification of the class under Rule 23(b)(3) (Mem. at 17), which permits maintenance of a class action if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

## A.  The Proposed Classes Meet All Rule 23(a) Requirements

### 1.  Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The parties agree that there are a total of approximately 2,503 Class Members. (Nordrehaug Decl. ¶ 25.) Numerosity is plainly met for the proposed Class.

### 2.  Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Dukes*, 564 U.S. at 349–50 (citation and internal quotation marks omitted). The plaintiff must allege that the class's injuries "depend upon a common contention" that is "capable of classwide resolution." *Id.* at 350. In other words, the "determination of [the common contention's] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "What matters to class certification . . . is not the raising of common questions—even in droves— but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (internal quotation marks and citation omitted).

1    Here, Rodriguez claims that Defendants violated the FCRA by willfully providing

2    unlawful release forms to applicants.  (See Nordrehaug Decl. ¶ 25.)  Questions such as

3    whether or not Defendants acted willfully and whether or not the forms complied with the

4    FCRA's statutory requirements are common to each Class Member, and those questions

5    can be answered by reference to Defendants' uniform practices in providing forms to

6    applicants and whether Defendants' had notice that the form was unlawful.  (*Id.*)

7    Rodriguez has therefore satisfied the commonality requirement.

8        **3.    Typicality**

9    Rule 23(a)(3) requires "the claims or defenses of the representative parties [to be]

10   typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  "[U]nder the

11   rule's permissive standards, representative claims are 'typical' if they are reasonably

12   coextensive with those of absent class members; they need not be substantially identical."

13   *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 613 (9th Cir. 2010) (en banc) (quoting

14   *Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1020 (9th Cir. 1998)), *rev'd on other grounds*,

15   564 U.S. 338 (2011).  As to the representative, "[t]ypicality requires that the named

16   plaintiffs be members of the class they represent." *Id.* (citing *Gen. Tech. Co. of Sw. v.*

17   *Falcon*, 457 U.S. 147, 156 (1982)).  The commonality, typicality, and adequacy-of-

18   representation requirements "tend to merge" with each other.  *Dukes*, 564 U.S. at 349 n.5

19   (citing *Falcon*, 457 U.S. at 157–58 n.13).

20   Here, Rodriguez asks that she be named class representative.  (Mem. at 18.)

21   Rodriguez's claims, like those of the proposed Class, are based on her contention that

22   Defendants' background check authorization and disclosure form was noncompliant with

23   the FCRA because it included a liability release on the same form.  (Nordrehaug Decl. ¶

24   25; Mem. at 19.)  The claims arise from the same alleged conduct, and Rodriguez falls

25   within the settlement class definition.  (Nordrehaug Decl. ¶ 25.)  Thus, typicality is met.

26       **4.    Adequacy**

27

28

8

1    Rule 23(a)(4) permits certification of a class action only if "the representative

2    parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P.

3    23(a)(4).  "Resolution of two questions determines legal adequacy: (1) do the named

4    plaintiff[] and [her] counsel have any conflicts of interest with other class members and

5    (2) will the named plaintiff[] and [her] counsel prosecute the action vigorously on behalf of

6    the class?"  *Hanlon*, 150 F.3d at 1020.

7    Rodriguez's claims arise out of the same set of facts as the claims for the proposed

8    Class, and her interest in obtaining the maximum recovery is coextensive with the interests

9    of the Class Members.  Rodriguez has already expended time and effort to prosecute this

10   case and protect the interests of the proposed Class.  (Nordrehaug Decl. ¶ 25.)  The Court

11   finds no sign of a potential conflict of interest between Rodriguez and the Class Members

12   she seeks to represent.  Accordingly, the Court concludes that Rodriguez is an adequate

13   class representative.

14   As to the adequacy of Rodriguez's counsel, the Court must consider "(i) the work

15   counsel has done in identifying or investigating potential claims in the action;

16   (ii) counsel's experience in handling class actions, other complex litigation, and the types

17   of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv)

18   the resources that counsel will commit to representing the class."  Fed. R. Civ. P.

19   23(g)(1)(A).  Here, Rodriguez asks that the Court appoint Norman B. Blumenthal, Kyle R.

20   Nordrehaug, and Aparajit Bhowmik of Blumenthal, Nordrehaug, & Bhowmik, LLP as

21   Class Counsel in this action.  (Mem. at 20; SA § I(C).)  Counsel has provided a "Firm

22   Resume" describing the individual experience of each attorney and the overall extensive

23   experience of the firm in litigating class action cases.  (Nordrehaug Decl. ¶ 26; Ex. 2 to

24   Nordrehaug Decl.)  For example, Counsel's firm has been involved in over 200 class

25   actions, many of which it "successfully prosecuted [to] obtain[] significant recoveries."

26   (Nordrehaug Decl. ¶ 26.)  Some of these actions involve similar claims for FCRA

27   violations.  (Mem. at 15.)  From this experience, it appears that Class Counsel has

28

1  adequate knowledge of and experience in the applicable law in this area.  Based on the

2  experience and work of Rodriguez's proposed Class Counsel, the Court concludes that

3  they have satisfied the adequacy requirement.  The Court therefore appoints Norman B.

4  Blumenthal, Kyle R. Nordrehaug, and Aparajit Bhowmik as Class Counsel in this action.

5

6  **B.**      **The Proposed Classes Meet the Rule 23(b) Requirements**

7        Rodriguez seeks certification under Rule 23(b)(3).  (Mem. at 17.)  For the reasons

8  set forth below, the Court holds that certification of the proposed Class is appropriate

9  under Rule 23(b)(3).

10       Under Rule 23(b)(3), a class action may be maintained if: "[1] the court finds that

11  the questions of law or fact common to class members *predominate* over any questions

12  affecting only individual members, and [2] that a class action is *superior* to other available

13  methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. R. 23(b)(3)

14  (emphases added).  When examining a class that seeks certification under Rule 23(b)(3),

15  the Court may consider:

16
17       (A) the class members' interests in individually controlling the prosecution
         or defense of separate actions;

18
19       (B) the extent and nature of any litigation concerning the controversy
         already begun by or against class members;

20
21       (C) the desirability or undesirability of concentrating the litigation of the
         claims in the particular forum; and

22       (D) the likely difficulties in managing a class action.

23

24       *Id.*  The Court finds that Rodriguez's proposed Class satisfies both the

25  predominance and superiority requirements.

26  **1.**      **Predominance**

27

28

1    "[T]he predominance analysis under Rule 23(b)(3) focuses on the relationship

2    between the common and individual issues in the case, and tests whether the proposed

3    class is sufficiently cohesive to warrant adjudication by representation." *Abdullah v. U.S.*

4    *Sec. Associates, Inc.*, 731 F.3d 952, 964 (9th Cir. 2013) (citations and internal quotation

5    marks omitted).  "Rule 23(b)(3) requires [only] a showing that questions common to the

6    class predominate, not that those questions will be answered, on the merits, in favor of the

7    class." *Id.* (alterations in original).

8        Here, as discussed above, Class Members' claims turn on whether Defendants'

9    background check release form violated the FCRA.  This common question and the

10   common legal remedies will predominate in this action.

11       **2.    Superiority**

12       The Court further finds that a class action would be a superior method of

13   adjudicating Rodriguez's claims for the proposed Class.  "The superiority inquiry under

14   Rule 23(b)(3) requires determination of whether the objectives of the particular class

15   action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023.  "This

16   determination necessarily involves a comparative evaluation of alternative mechanisms of

17   dispute resolution." *Id.*  Here, each member of the proposed Class pursuing a claim

18   individually would burden the judicial system and run afoul of Rule 23's focus on

19   efficiency and judicial economy.  *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d

20   935, 946 (9th Cir. 2009) ("The overarching focus remains whether trial by class

21   representation would further the goals of efficiency and judicial economy.").  Further,

22   litigation costs would likely exceed potential recovery if each Class Member litigated

23   individually.  "Where recovery on an individual basis would be dwarfed by the cost of

24   litigating on an individual basis, this factor weighs in favor of class certification." *Wolin v.*

25   *Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citations omitted).

26       Considering the non-exclusive factors under Rule 23(b)(3)(A)–(D), the Court finds

27   that Class Members' potential interests in individually controlling the prosecution of

28

separate actions and the potential difficulties in managing the class action do not outweigh the desirability of concentrating this matter in one litigation.  *See* Fed. R. Civ. P. 23(b)(3)(A), (C), (D).  Therefore, the Court finds that the proposed Class may be certified under Rule 23(b)(3).

### C.     Rule 23(g) – Appointment of Class Counsel

Under Rule 23(g), "a court that certifies a class must appoint class counsel."  Fed. R. Civ. P. 23(g)(1).  As previously stated in this Order, the Court is satisfied that Rodriguez's counsel is adequate and thus may be appointed as Class Counsel in this case. (See Nordrehaug Decl. ¶ 26; Ex. 2 to Nordrehaug Decl.)

Having found that the proposed Class satisfies the remaining elements of Rule 23(a), the Court conditionally certifies the Class for settlement purposes only.

### III.    PRELIMINARY APPROVAL OF CLASS SETTLEMENT

To preliminarily approve a proposed class-action settlement, Rule 23(e)(2) requires the Court to determine whether the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2).  In turn, review of a proposed settlement typically proceeds in two stages, with preliminary approval followed by a final fairness hearing.  Federal Judicial Center, *Manual for Complex Litigation*, § 21.632 (4th ed. 2004).

"To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant;[2] and the reaction of the class members to the

---

[2] This factor does not apply in this case.

12

proposed settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (internal citation and quotation marks omitted).  "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).  "'It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness,' and 'the settlement must stand or fall in its entirety.'" *Staton*, 327 F.3d at 960 (quoting *Hanlon*, 150 F.3d at 1026) (alterations omitted).

In addition to these factors, where "a settlement agreement is negotiated *prior* to formal class certification," the Court must also satisfy itself that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011) (quotation marks and citation omitted).  Accordingly, the Court must look for explicit collusion and "more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations."  *Id.* at 947.  Such signs include (1) "when counsel receive a disproportionate distribution of the settlement," (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund."  *Id.* (quotation marks and citations omitted).

At this preliminary stage and because Class Members will receive an opportunity to be heard on the Settlement Agreement, "a full fairness analysis is unnecessary . . . ." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008).  Instead, preliminary approval and notice of the settlement terms to the proposed Class are appropriate where "[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of

1    *possible* approval   . . . ." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079

2    (N.D. Cal. 2007) (internal quotation marks and citation omitted) (emphasis added); *see*

3    *also Acosta v. Trans Union*, *LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) ("To determine

4    whether preliminary approval is appropriate, the settlement need only be *potentially* fair, as

5    the Court will make a final determination of its adequacy at the hearing on the Final

6    Approval, after such time as any party has had a chance to object and/or opt out.")

7    (emphasis in original).

8            In evaluating all applicable factors below, the Court finds that the proposed

9    Settlement Agreement should be preliminarily approved.

10

11       **A.      Strength of Plaintiff's Case**

12           Plaintiff's principal claim is that Defendants' background check authorization and

13   disclosure form violated the FCRA by also including a liability release.   While Rodriguez

14   is confident that her claims are meritorious, Defendants deny any wrongdoing.  (Mem. at

15   10; Nordrehaug Decl. ¶ 8.)  For example, Defendants point out that some courts have

16   found that disclosure forms containing additional information, like the one at issue here, do

17   not violate the FCRA.  (Mem. at 13.)  Moreover, Defendants argue that even if the form

18   violates the FCRA, their actions were not willful and thus they are not liable.  (*Id.*)

19   Defendants cite to several recent cases in favor of their argument.  (*Id.*)  The Court finds

20   that given these potential obstacles, this factor weighs in favor of granting preliminary

21   approval.

22

23       **B.      Risk, Complexity, and Likely Duration of Further Litigation**

24           Rodriguez argues that continued litigation would become costly, time consuming,

25   and uncertain.  (Mem. at 10.)  Rodriguez and her Counsel anticipate that, "in the absence

26   of the approved settlement, they would face a protracted litigation course…that would

27   consume time and resources and present … them with ongoing litigation risks and

28

uncertainties."  (Nordrehaug Decl. ¶ 18.)  Settlement eliminates the risks inherent in

certifying a class, prevailing at trial, and withstanding any subsequent appeals, and it may

provide the last opportunity for class members to obtain relief.  This factor therefore

weighs in favor of granting preliminary approval.  *See Nat'l Rural Telecomms. Coop. v.*

*DIRECTV, Inc*., 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("In most situations, unless the

settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and

expensive litigation with uncertain results." (citation omitted)).

### C.    Risk of Maintaining Class Certification

Rodriguez maintains that there are risks involved in obtaining class certification.

Defendants argue that pursuant to *Spokeo v. Robins*, 136 S. Ct. 1540 (2016), the standing

of each plaintiff would depend on "individualized facts" such as the actual harm that each

individual suffered as a result of the alleged FCRA violation. (Nordrehaug Decl. ¶ 11.)

Although many courts have certified classes under the FCRA, there necessarily remains a

risk that a class may be decertified, and these risks have been held to be "not so minimal"

as to preclude a Court granting preliminary approval to a settlement agreement.  *See*

*Rodriguez v. West Publishing Corp.*, 536 F.3d 948, 966 (9th Cir. 2009).  Therefore, the

Court finds that there is some risk of maintaining class certification in this action and that

this factor weighs in favor of preliminary approval.

### D.    Amount Offered in Settlement

Upon reviewing Rodriguez's memorandum in support of her Motion, the Court

finds sufficient indicia that the amount offered in settlement is reasonable.  The proposed

Settlement Agreement provides for a Gross Settlement Amount of $675,000.  (SA §

III(A).)  No portion of the settlement fund will revert back to Defendants.  (*Id.*)  Class

Counsel represents that this amount is approximately 27% of Defendants' maximum

potential liability of approximately $2.5 million.  (Nordrehaug Decl. ¶ 20.)  A "settlement

amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (internal quotation marks and citation omitted).  A recovery of 27% of Defendants' maximum potential liability equals or surpasses the recovery in other FCRA class actions. *See Hawkins v. S2Verify*, No. C 15-03502 WHA, 2016 U.S. Dist. LEXIS 153576, at *3 (N.D. Cal. Nov. 4, 2016) (approving a settlement amount of roughly 25% of total potential liability); *Lengel v. HomeAdvisor, Inc.*, No. CV 15-2198-KHV, 2017 WL 364582, at *2 (D. Kan. Jan. 25, 2017) (approving a settlement of roughly 12% of total potential liability).

The allocation of settlement funds also appears fair, adequate, and reasonable. Individual settlement allocations are determined by dividing the Net Settlement Amount by the total number of participating Class Members.  (SA § III(C)(2).)  Accordingly, the plan provides each Class Member with an equal *pro rata* share of the Net Settlement Proceeds.  *See In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994) ("A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable.").  This weighs in favor of preliminary approval.

Finally, the amount of the Settlement also appears fair, adequate, and reasonable in light of the claims released by Rodriguez and the Class Members.  Each Class Member will release the "claims … [that] are asserted or which could have been asserted in the First and Second causes of action of the Complaint and First Amended Complaint."[3]  (SA § III(F)(1).)  The scope of the release is therefore limited to the claims related to the background consent form.  Accordingly, the scope of this release weighs in favor of preliminary approval.  *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a related claim in the future even

---

[3] In addition to the released claims set forth above, Rodriguez releases "all claims, known or unknown" that she may have against Defendants.  (SA § III(F)(2).)

1  though the claim was not presented and might not have been presentable in the class

2  action, but only where the released claim is based on the identical factual predicate as that

3  underlying the claims in the settled class action." (internal quotation marks and citation

4  omitted)).

5        Although the Court does not approve the proposed amount of attorneys' fees and

6  costs at this stage, the Court raises its concerns with Rodriguez's proposed attorneys' fees

7  award.  The Settlement indicates that Class Counsel will apply for an award of attorneys'

8  fees of up to one-third the Gross Settlement Amount, subject to court approval.  (SA §

9  III(B)(2).)  In the Ninth Circuit, the benchmark for fees is 25% of the common fund.  *See*

10 *In re Bluetooth*, 654 F.3d at 942.  Before final approval, the court will "scrutinize closely

11 the relationship between attorneys' fees and benefit to the class" and will not "award[]

12 unreasonably high fees simply because they are uncontested."  *Id.* at 948 (internal

13 quotation marks and citation omitted).  Class Counsel must therefore make a sufficient

14 showing justifying any upward departure from the Ninth Circuit's fees benchmark before

15 the Court will award 33% of the settlement fund.

16       Separately, the Settlement Agreement provides that Rodriguez may make a claim to

17 the Court for a Class Representative Service Payment of up to $10,000.00, which would be

18 in addition to any pro rata distribution she receives as a Class Member.  (SA § III(B)(1).)

19 The Ninth Circuit has instructed district courts to "scrutinize carefully the awards so that

20 they do not undermine the adequacy of the class representatives."  *Radcliffe v. Experian*

21 *Information Solutions Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013).  As the Ninth Circuit has

22 noted, a "significant disparity between the incentive awards and the payments to the rest of

23 class members" risk creating a conflict of interest.  *Id.*  Accordingly, in her request for an

24 incentive payment, Rodriguez must justify why the incentive award is reasonable,

25 especially when set against the actual or anticipated recovery of Settlement Class

26 members.

27

28

1

### E.      Stage of the Proceedings and Extent of Discovery Completed

2      This factor requires the Court to evaluate whether "the parties have sufficient

3  information to make an informed decision about settlement."  *Linney v. Cellular Alaska*

4  *P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).  Discovery can be both formal and informal.

5  *See Clesceri v. Beach City Investigations & Protective Servs., Inc.*, No. CV-10-3873-JST

6  (RZx), 2011 WL 320998, at *9 (C.D. Cal. Jan. 27, 2011).  Here, the parties engaged in

7  informal discovery and investigation, including the exchange of "information and

8  documentation concerning [Defendants'] policies and the composition of the class, …

9  information regarding the number of possible class members, Defendants' background

10  check release, and other relevant issues."  (Nordrehaug Decl. ¶ 10.)  Plaintiff then

11  conducted an extensive review of these documents to determine the merits of her claims

12  and the possible legal risks she would face.  (*Id.*; Mem. at 15.)

13      Given these facts, the Court concludes that the parties possess sufficient information

14  to make an informed settlement decision.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d

15  at 459 (finding plaintiffs had "sufficient information to make an informed decision about

16  the [s]ettlement" where formal discovery had not been completed but class counsel had

17  "conducted significant investigation, discovery and research, and presented the court with

18  documentation supporting those services.").  Accordingly, this factor weighs in favor of

19  granting preliminary approval.

20

21

### F.      Experience and Views of Counsel

22      "The recommendations of plaintiffs' counsel should be given a presumption of

23  reasonableness."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal.

24  2008) (citation omitted).  As discussed above, Class Counsel have experience serving as

25  plaintiffs' counsel in large class actions, including those that involve FCRA claims, and

26  they have endorsed the Settlement Agreement as fair, reasonable, and adequate.

27

28

(Nordrehaug Decl. ¶¶ 10, 26; Ex. 2 to Nordrehaug Decl.)  Thus, this factor favors preliminary approval.

### G.       Reaction of Class Members to Proposed Settlement

Rodriguez has not provided evidence of the Class Members' reactions to the proposed Settlement Agreement.  However, the Court recognizes that the lack of such evidence is not uncommon at the preliminary approval stage.  Before the final fairness hearing, Class Counsel shall submit a sufficient number of declarations from class members discussing their reactions to the proposed Settlement Agreement.  A small number of objections at the time of the fairness hearing may raise a presumption that the Settlement Agreement is favorable to the class.  *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1043.  However, the Court will pay special attention to those objections that pertain to the settlement amount and Class Members' concerns regarding its fairness, reasonableness, and adequacy.

1    **H.     <u>Signs of Collusion</u>**

2         The Court finds no signs, explicit or subtle, of collusion between the parties.  Of

3    course, as discussed above, before final approval the Court will "scrutinize closely the

4    relationship between attorneys' fees and benefit to the class" and will not "award[]

5    unreasonably high fees simply because they are uncontested."  *In re Bluetooth*, 654 F.3d at

6    948 (internal quotation marks and citation omitted).  The Court will also ultimately

7    determine whether the requested service payment is justified by the circumstances of this

8    case.  Notably, unawarded amounts will become part of the Net Settlement Proceeds that

9    go to the benefit of the Class Members.  Moreover, this Settlement is the result of a

10   mediation held before an experienced mediator, David Rotman.  (Nordrehaug Decl. ¶ 12.)

11   A mediator's involvement in the Settlement Agreement is a factor that supports the

12   argument that it is non-collusive.  *See Satchell v. Fed. Express Corp.*, No. C 03-2879 SI,

13   2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).

14        Considering all of the factors together, the Court preliminarily concludes that the

15   Settlement Agreement is fair, reasonable, and adequate.

16

17   **IV.   <u>APPROVAL OF THE PROPOSED CLAIMS ADMINISTRATOR</u>**

18        The parties agreed to appoint KCC Class Action Services as the Settlement

19   Administrator in this action, subject to the Court's approval.  (*See* Mem. at 6.)  Rodriguez

20   has provided sufficient documentation of KCC's competence in carrying out the duties of a

21   settlement administrator.  (See Morrison Decl.)  KCC has administered over 6,000 class

22   action settlements and has been widely recognized for its outstanding services.  (Ex. A to

23   Morrison Decl., Doc. 86-1.)  Moreover, this Court has previously approved KCC as the

24   settlement administrator in another class action settlement.  *Etter v. Thetford Corp.*, 8:13-

25   cv-00081-JLS-RNB, ECF No. 468, at 23 (C.D. Cal. March 29, 2016).  Accordingly, the

26

27

28

Court approves KCC as the Claims Administrator in this action.[4]

## V.    PRELIMINARY APPROVAL OF CLASS NOTICE FORM AND METHOD

For a class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). However, actual notice is not required. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).

Pursuant to the Settlement Agreement, Defendants will provide the Settlement Administrator with the following information about each Class Member: his or her name, social security number, most recent known mailing address, and most recent known telephone number. (SA §§ I(E), III(E)(2)(a).) As soon as possible, or no later than fifteen days after receiving the Class Members' data, the Settlement Administrator will mail the Class Notice Packets to all Class Members via first-class regular mail. (*Id.* § III(E)(2)(b). For any Notice Packets returned as non-delivered, the Settlement Administrator will promptly search for a more current address and re-mail the Class Notice Packet to the Class Member. (*Id.* § III(E)(2)(c).) Class Members who wish to object to, or exclude themselves from, the Settlement Agreement must file an objection or request for exclusion no later than forty-five days after the Notice Packet is first mailed. (*Id.* § III(E)(3)(a).) The parties have also agreed that if the first Notice Packet is returned but the Administrator identifies an alternative address, class members will have forty-five days from re-mailing of the Notice Packet. (Supp. at 1.)

The Supreme Court has found notice by mail to be sufficient if the notice is "reasonably calculated . . . to apprise interested parties of the pendency of the action and

---

[4] The Court does not approve any award of costs to KCC at this time. Rodriguez shall apply for approval of an award of costs for claims administration concurrently with her application for attorneys' fees and costs and service payment.

afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *accord Sullivan v. Am. Express Publ'g Corp.*, No. SACV 09-142-JST ANx, 2011 WL 2600702, at *8 (C.D. Cal. June 30, 2011) (quoting *Mullane*). The Court generally finds that the proposed procedure for class notice satisfies this standard.

Rodriguez has provided the Court with a copy of the proposed notice. (Class Notice, Ex. A to Nordrehaug Decl., Doc. 80-2.) Under Rule 23, the notice must include, in a manner that is understandable to potential class members: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). Other than a statement that a Class Member may enter an appearance through an attorney, the proposed notice includes this necessary information. (See Class Notice.) The Court requires that Section 3 ("What are the terms of the Settlement?"), Section 7 ("What if I don't want to be a part of the Settlement?"), and Section 8 ("How do I tell the Court that I don't like the Settlement?") be modified to notify Class Members that they may enter an appearance through an attorney if they so choose.

Additionally, the Court requires the Class Notice to be modified as follows:

- Eliminate any reference to filing a written objection with the Court, including in the "Summary of Your Legal Rights Box" where it instructs class members to "Object" by writing to the Court, and in Section 8 ("How do I tell the Court that I don't like the Settlement?"). Class Counsel are responsible for filing, in connection with Rodriguez's motion for final approval, any objections along with a brief responding to such objections. Accordingly, the Class Notice

should instruct Class Members to object by mailing a written objection to Class Counsel, Counsel for Defendants, and the Settlement Administrator at the indicated addresses.

- Under Section 8 ("How do I tell the Court that I don't like the Settlement?"), the notice must:

  o Clearly set forth that the motion for attorneys' fees, costs, and Plaintiff's service award will be filed at least 15 days before the response deadline so class members have the opportunity to review and object to the fees, cost, and award requests.  The notice should also clearly indicate the date by which Class Counsel will file this motion with the Court.

  o Clearly set forth how a class member can view the above requests, namely by (a) appearing in person during regular business hours at the Office of the Clerk of the United States District Court for the Central District of California, (b) reviewing the request online through the Public Access to Court Electronic Resources System (PACER), available online at http://www.pacer.gov, (c) going to the website referenced in Section 10 ("How do I get more information about the Settlement?"), and (d) any other methods identified by the parties.  In this section, the notice must also clearly identify the full address of the Office of the Clerk of Court.

Subject to the changes discussed above, the Court approves the form and method of class notice.  The Court ORDERS the parties to file a revised version of the Full Notice **within 10 days** of this Order.

Finally, the Court requires that any motion for attorneys' fees, costs, and service payments be filed with the Court **no later than 15 days before** the latest exclusion deadline.  *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993 (9th Cir. 2010).  Rodriguez shall file her motion for final approval no later than **June 8, 2018**,

including a brief responding to any submitted objections and otherwise summarizing the Class Members' participation in the settlement and the settlement administration to date.

## VI.    **CONCLUSION**

For the reasons discussed above, the Court (1) conditionally certifies the Class for settlement purposes only, (2) preliminarily approves the Settlement Agreement, (3) names Maria Rodriguez as Class Representative, (4) names Norman B. Blumenthal, Kyle R. Nordrehaug, and Aparajit Bhowmik of Blumenthal, Nordrehaug, & Bhowmik, LLP as Class Counsel, (5) approves KCC as the Settlement Administrator, and (6) approves the form and method of class notice, subject to the changes discussed above.  The Court ORDERS the parties to file a revised version of the Full Notice **within 10 days** of this Order.

The Court sets a final fairness hearing for **June 22, 2018, at 2:30 p.m.**, to determine whether the settlement should be finally approved as fair, reasonable, and adequate to Class Members.  Plaintiffs shall file their motion for final approval no later than **June 8, 2018**.  Class Counsel and the Class Representative shall file their applications for fees, costs, and the incentive payment **no later than 15 days before** the latest exclusion deadline.  *In re Mercury Interactive*, 618 F.3d at 993.  The Court reserves the right to continue the date of the final fairness hearing without further notice to class members.

DATED: December 06, 2017

JOSEPHINE L. STATON
_____
JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE