UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:16-cv-00059-JLS-KES                    Date: June 26, 2018
Title: Maria Chona Rodriguez v. El Toro Medical Investors Limited Partnership et al.

Present: **HONORABLE JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

| Terry Guerrero | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:   ATTORNEYS PRESENT FOR DEFENDANT:

Not Present                                              Not Present

**PROCEEDINGS:** (IN CHAMBERS) ORDER (1) GRANTING PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (Doc. 92); AND (2) GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE ENHANCEMENT (Doc. 90)

Before the Court are two unopposed Motions filed by Plaintiff Maria Rodriguez. One motion seeks final approval of the class action settlement, (Final Approval Mot., Doc. 92), and the other motion seeks approval of the requested attorneys' fees, costs, and class representative enhancement. (Fee Mot., Doc. 90.) Having reviewed the papers, held a fairness hearing, and taken the matter under submission, the Court GRANTS the Motion for Final Approval of the Class Action Settlement and GRANTS IN PART the Motion for Attorneys' Fees, Costs, and Class Representative Enhancement.

**I.     BACKGROUND**

   **A.     Procedural History**

On January 15, 2016, Plaintiff filed this class action lawsuit against Defendant El Toro Medical Investors LP ("El Toro"), alleging violations of the Fair Credit Reporting Act (the "FCRA") and the California Labor Code. (Compl., Doc. 1.) On March 15,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:16-cv-00059-JLS-KES  Date: June 26, 2018
Title: Maria Chona Rodriguez v. El Toro Medical Investors Limited Partnership et al.

2016, Plaintiff filed a First Amended Complaint alleging the following claims: (1) failure to make proper disclosures in violation of the FCRA, 15 U.S.C. § 1681; (2) failure to obtain proper authorization in violation of the FCRA, 15 U.S.C. § 1681; (3) unfair competition in violation of Cal. Bus. & Prof. Code §§ 17200; (4) failure to pay overtime wages in violation of Cal. Lab. Code §§ 510, 1198; (5) failure to provide accurate itemized wage statements in violation of Cal. Lab. Code § 226; (6) failure to provide wage statements when due in violation of Cal. Lab. Code §§ 201, 202, and 203; and (7) violation of the Private Attorneys General Act, Cal. Lab. Code §§ 2698. (FAC ¶¶ 55–116, Doc. 11.) With regard to the FCRA claims, Plaintiff alleged that El Toro required prospective employees to sign a background check authorization form that included a liability release on the same page. (*Id.* ¶ 56.)

El Toro filed a motion to dismiss the FCRA claims on August 9, 2016, which the Court denied. (Order re: MTD, Doc. 50.) The parties then engaged in discovery and informal settlement negotiations, after which they stipulated to dismiss Plaintiff's California Labor Code claims. (Joint Stip. to Dismiss, Doc. 63.) El Toro filed an Answer to the remaining claims under the FCRA on January 31, 2017. (Answer, Doc. 65.) Thereafter, the parties participated in a mediation, and on August 10, 2017, Plaintiff filed a notice of settlement.

On October 10, 2017, Plaintiff filed a Motion for Preliminary Approval. (MPA, Doc. 80.) The Court requested supplemental briefing on the proposed class notice procedure and the proposed settlement administrator, which Plaintiff timely provided. (Order re: Suppl. Briefing, Doc. 85; Suppl. Brief, Doc. 86.) On December 6, 2017, the Court conditionally certified a class for settlement purposes, preliminarily approved the proposed settlement, and approved the appointment of KCC Class Action Services ("KCC") as the claims administrator in this action. (Preliminary Approval Order at 2, Doc. 87.) However, the Court required Plaintiff to make several revisions to the proposed class notice. (*Id.* at 22–23.) Accordingly, Plaintiff filed a revised class notice incorporating the Court's changes, which the Court then approved. (Order Approving Class Notice, Doc. 89.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:16-cv-00059-JLS-KES                          Date: June 26, 2018
Title: Maria Chona Rodriguez v. El Toro Medical Investors Limited Partnership et al.

### B. The Settlement

The Settlement provides for a full-distribution, non-reversionary Settlement Fund of $675,000. (SA § I(O), Doc. 90-2.) The Settlement Class consists of "all individuals who applied for employment with any Released Party[1] in the United States who executed a background check disclosure and/or authorization form that included a liability release clause and whose background check report was procured pursuant to such form." (*Id.* § I (B).) The "Class Period" runs from January 15, 2014, through the date of preliminary approval, which was December 6, 2017. (*Id.* § I(I).)

Subject to Court approval, the following payments will be made from the "Gross Settlement Amount" to arrive at the Net Settlement Amount ("NSA"): (a) up to $10,000 to Plaintiff as a class representative service award; (b) up to one-third of the Settlement Fund ($225,000) in attorneys' fees; (c) reasonable costs not to exceed $20,000; and (d) approximately $25,000 to KCC for the costs of claims administration. (*Id.* § III(B).) The NSA will then be distributed to Participating Class Members on an equal, pro rata basis. (*Id.* § III(C).) Participating Class Members need not submit a claim form to receive their individual settlement payment. (*Id.*)

In return for the consideration described above, the Participating Class Members release the following:

> any and all claims, charges, causes of action, debts, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, penalties, interest, damages (including but not limited to actual damages, statutory damages, and punitive damages), restitution, injunctive relief, declaratory relief and

---

[1] "Released Parties" include "all Life Care owned, operated, and/or managed facilities, including but not limited to Life Care Centers of America, Inc., El Toro Medical Investors, L.P. dba Lake Forest Nursing Center, Life Care Centers of America, Inc. dba Mirada Hills Rehabilitation and Convalescent Hospital, Garden Grove Medical Investors Limited Partnership, Vista Medical Investors Limited Partnership, and Escondido Medical Investors Limited Partnership," and their parents, subsidiaries, employees, and assigns. (SA § I (V).)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:16-cv-00059-JLS-KES                    Date: June 26, 2018
Title: Maria Chona Rodriguez v. El Toro Medical Investors Limited Partnership et al.

remedies of any other type during the Class Period through the date of Preliminary Approval that were or could have been asserted in this Action based on any facts, conduct, circumstances, transactions, events, policies, procedures, occurrences, acts, disclosures, statements, omissions or failures to act that are pled or that arise out of or are related to the facts, conduct, circumstances, transactions, events, policies, procedures, occurrences, acts, disclosures, statements, omissions or failures to act, which are asserted or which could have been asserted in the First and Second causes of action of the Complaint and First Amended Complaint, including any and all claims that Plaintiff and the Participating Class Members have arising out of or relating directly or indirectly in any manner whatsoever to the facts alleged or which could have been alleged or asserted in the Complaint and First Amended Complaint relating to the First and Second causes of action, including but not limited to any and all claims under 15 U.S.C.§ 1681b(b) of the Fair Credit Reporting Act.

(*Id.* § III(F)(1).) In addition to this release, Plaintiff specifically releases all claims that she may have against El Toro. (*Id.* § III(F)(2)–(3).)

## C.   <u>Notice and Response</u>

Notice was sent to Class Members pursuant to the method approved by the Court. The Notice adequately described the litigation and the scope of the involved Class as well as (1) the amount and makeup of the Settlement Fund; (2) the plan of allocation; (3) that Plaintiff's Counsel and Plaintiff will apply for attorneys' fees, costs, and a service award; and (4) Class Members' options to participate, opt out, or object to the settlement. (*See* Class Notice, Doc. 90-2.)

Within one week following preliminary approval, El Toro provided KCC with the contact information of 2,501 identified Class Members.[2] (Morrison Decl. ¶ 2, Doc. 92-

---

[2] The Settlement Agreement provides that the Class Member data shared with KCC was to remain "strictly confidential" and was not to be disclosed to Plaintiff or to Class Counsel. (SA § III(E)(2)(a).)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:16-cv-00059-JLS-KES                                  Date: June 26, 2018
Title: Maria Chona Rodriguez v. El Toro Medical Investors Limited Partnership et al.

4.) The mailing addresses were then processed and updated using the U.S. Postal Service's National Change of Address Database. (*Id.*) On December 28, 2017, KCC mailed out 2,501 Notices to Class Members via First Class Mail. (*Id.* ¶ 3.) Initially, 474 Notices were returned as undeliverable. (*Id.* ¶ 4.) KCC performed address traces on these Notices and promptly re-mailed 435 Notices upon locating a more current address. (*Id.*) Ultimately, KCC received three requests for exclusion and no objections to the settlement. (*Id.* ¶¶ 7–8.) KCC reports that as of today, there are 2,498 Participating Class Members, each of whom will receive an individual settlement payment of approximately $159.15.[3] (*Id.* ¶ 9.)

Plaintiff now moves for final approval of the Settlement Agreement, and attorneys' fees of 33% of the Gross Settlement Amount, reimbursement of expenses totaling $19,167.03, payment of $22,450 to KCC for its services as settlement administrator, and a class representative enhancement award of $10,000 to Plaintiff. (Final Approval Mot.; Fee Mot.)

## II.     CONDITIONAL CERTIFICATION OF THE CLASS

In its Preliminary Approval Order, the Court discussed the propriety of conditional class certification for the purposes of settlement. (Prelim. Approval Order at 7–12.) The Court also discussed the adequacy of Plaintiff as Class Representative and Plaintiff's Counsel as Class Counsel. (*Id.* at 8–9.) The Court sees no reason to depart from its previous conclusion regarding the existence of a proper settlement class, its appointment of Plaintiff as Class Representative, or its appointment of Class Counsel. The Court therefore incorporates its class certification analysis from the Preliminary Approval Order into the instant Order.

---

[3] This estimate presumes that the Court will award fees and a representative enhancement as set forth in the Settlement Agreement. Because the Court reduces the requested awards, Class Members' individual settlement payments correspondingly increase, as addressed later in this Order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:16-cv-00059-JLS-KES                         Date: June 26, 2018
Title: Maria Chona Rodriguez v. El Toro Medical Investors Limited Partnership et al.

Accordingly, the Court GRANTS the Motion as to final approval of conditional class certification for the purposes of settlement.

### III.     FINAL APPROVAL OF CLASS ACTION SETTLEMENT

#### A.     Legal Standard

Before approving a class action settlement, Rule 23 of the Federal Rules of Civil Procedure requires the Court to determine whether the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). "To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (citation and internal quotation marks omitted).[4] "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness, and the settlement must stand or fall in its entirety." *Staton*, 327 F.3d at 960 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

In addition to these factors, where "a settlement agreement is negotiated *prior* to formal class certification," the Court must also satisfy itself that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods.*

---

[4] Factor (7), the presence of a governmental participant, does not apply to this case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:16-cv-00059-JLS-KES         Date: June 26, 2018
Title: Maria Chona Rodriguez v. El Toro Medical Investors Limited Partnership et al.

*Liab. Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011) (citations and internal quotation marks omitted) (emphasis in original). Accordingly, the Court must look for explicit collusion and "more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947. Such signs include (1) "when counsel receive a disproportionate distribution of the settlement," (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* (internal citations and quotation marks omitted).

**B.     Discussion**

In its Preliminary Approval Order, the Court evaluated each of the factors identified above to determine whether the Settlement is fair, reasonable, and adequate under Rule 23. (Prelim. Approval Order at 12–20.) The Court determined that the following factors weighed in favor of approval: (1) the strength of Plaintiff's case; (2) the risk, complexity, and likely duration of further litigation; (3) the risk of maintaining class certification; (4) the amount offered in settlement; (5) the stage of the proceedings and extent of discovery completed; and (6) the experience and views of class counsel. (*Id.* at 12–19.) The Court was also satisfied that there were no signs of collusion between the parties. (*Id.* at 20.) The Court sees no reason to depart from its previous conclusion as to these factors. The Court therefore incorporates its analysis from the Preliminary Approval Order into the instant Order.

At the time of preliminary approval, however, Plaintiff did not provide evidence of Class Members' reactions to the proposed Settlement Agreement. (*Id.* at 19.) Since that time, KCC sent 2,501 Notices to Class Members via First Class Mail. (Morrison Decl. ¶¶ 3–4.) KCC received 3 timely requests for exclusion and no written objections to the settlement. (*Id.* ¶¶ 7–8.) Thus, total objections and opt-outs comprise less than 0.1% of the Class. The Court finds this relatively small number of objections and opt-outs supports the fairness of the settlement. *See Chun-Hoon v. McKee Foods Corp.*, 716 F.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:16-cv-00059-JLS-KES                                                        Date: June 26, 2018
Title: Maria Chona Rodriguez v. El Toro Medical Investors Limited Partnership et al.

Supp. 2d 848, 852 (N.D. Cal. 2010) (finding that "zero objections and sixteen opt-outs (comprising 4.86% of the class) … strongly supports settlement"); *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *5 (N.D. Cal. Jan. 26, 2007) (approving a settlement where the opt-out rate was 2%), *aff'd*, 331 F. App'x 452 (9th Cir. 2009). Because the Settlement Agreement provides that the contact information of Class Members would be kept confidential and would not be disclosed to Plaintiff or her Counsel, (SA § III(E)(2)(a)), Class Counsel was unable to provide declarations from Class Members regarding their reactions to the settlement. (*See* Nordrehaug Decl. ¶ 3, Doc. 96.) Nevertheless, given the absence of any objections and the small number of opt-outs, the Court determines that "the absence of a negative reaction" supports the settlement. *Chun-Hoon*, 716 F. Supp. 2d at 852.

Considering all of the factors together, the Court concludes that the settlement is fair, reasonable, and adequate. Accordingly, the Court GRANTS Plaintiff's Motion for Final Approval of the Class Action Settlement.

## IV.   CLAIMS ADMINISTRATOR COSTS

The Settlement Agreement provides that the claims administrator will be provided payment for its services out of the Gross Settlement Amount in an amount not to exceed $25,000. (SA § III(B)(3).) Plaintiff requests a payment of $22,450 to KCC for administration. (Final Approval Mem. at 7.) Although Plaintiff did not provide the Court with an itemized invoice of KCC's costs, the Court nonetheless finds Plaintiff's request reasonable, as KCC's representative has affirmed this cost total, it is less than the originally estimated costs, and it is consistent with costs of administration in similarly sized class settlements. (Morrison Decl. ¶ 10.) *See, e.g., Scott v. HSS Inc.*, No. 814-CV-01911-JLS (RNB), 2017 WL 7049524, at *5 (C.D. Cal. Dec. 18, 2017).

Accordingly, the Court GRANTS the Motion as to this payment.

## V.   ATTORNEYS' FEES

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:16-cv-00059-JLS-KES　　　　　　　　　　　　　Date: June 26, 2018
Title: Maria Chona Rodriguez v. El Toro Medical Investors Limited Partnership et al.

Plaintiff seeks an attorneys' fee award of $225,000, which is 33% of the Gross Settlement Amount. (Fee Mem. at 1.) For the following reasons, the Court declines to depart from the 9th Circuit's 25% benchmark for fee awards in common fund cases, and awards attorneys' fees of $168,750, or 25% of the Gross Settlement Amount.

Rule 23 permits a court to award "reasonable attorneys' fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods.*, 654 F.3d at 941. In the Ninth Circuit, the benchmark for a fee award in common fund cases is 25% of the recovery obtained. *See id.* at 942 ("Where a settlement produces a common fund for the benefit of the entire class, . . . courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."). Courts must "justify any increase or decrease from this amount based on circumstances in the record." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 455 (E.D. Cal. 2013) (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). The Ninth Circuit has identified a number of factors the Court may consider in assessing whether an award is reasonable, including: (1) the results achieved, (2) the risk of litigation, (3) the skill required and quality of work, and (4) the contingent nature of the fee and the financial burden carried by the plaintiffs. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002). Counsel's lodestar may also "provide a useful perspective on the reasonableness of a given percentage award." *Id.* at 1050.

### A. *Vizcaino* Factors

First, the Court considers each of the four factors identified by the Ninth Circuit in *Vizcaino* to assess the reasonableness of Plaintiff's fee request. 290 F.3d at 1048–50.

As to the first factor, results achieved, Class Counsel achieved a settlement that represents 27% of El Toro's maximum potential liability under the FCRA, which the Court found to fall within the typical range of similar settlements. (Prelim. Approval

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:16-cv-00059-JLS-KES                                Date: June 26, 2018
Title: Maria Chona Rodriguez v. El Toro Medical Investors Limited Partnership et al.

Order at 15–16.)  Each Participating Class Member will receive approximately $185.[5]  While the amount offered in settlement is fair, the results achieved do not lead the Court to conclude an upward departure from the benchmark is warranted.  *See Singleton v. Domino's Pizza, LLC,* 976 F. Supp. 2d 665, 682–83 (D. Md. 2013) (awarding attorneys' fees in the amount of 25% of the common fund in a FCRA settlement where each class member was to receive an average gross recovery of between $243.72 and $370.97); *cf. Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 409 n.3 (E.D. Pa. 2010) (awarding attorneys' fees of 35%  in a FCRA settlement where each class member was estimated to receive an individual settlement payment of between $500–$1000).

     As to the second factor, risk of litigation, Plaintiff points to some out-of-circuit case law in which district courts found that background authorization forms that contain liability waivers, like the one at issue here, do not violate the FCRA.  (*See* Final Approval Mem. at 19; Fee Mem. at 3, *citing Smith v. Waverly Partners, LLC,* No. 3:10-CV-00028-RLV, 2012 WL 3645324, at *6 (W.D.N.C. Aug. 23, 2012).)  However, the Ninth Circuit has specifically rejected the case law that Plaintiff cites; instead, the Court found that the inclusion of a liability waiver on a background authorization form *is* a violation of the FCRA.  *See Syed v. M-I, LLC*, 853 F.3d 492, 502 (9th Cir.), *cert. denied*, 138 S. Ct. 447 (2017).  Therefore, the law in this area is not unsettled in this Circuit.  Although Plaintiff would ultimately have to prove El Toro's "willfulness" to win statutory damages, the Court does not find this risk particularly significant or unique in relation to other class

---

[5] To calculate this estimate, the Court takes the Gross Settlement Amount ($675,000), less attorneys' fees ($168,750), class representative enhancement ($2,000), expenses ($19,167.03), and administration costs ($22,450) as awarded in this Order, and divides the difference by the total number of Participating Class Members (2,501).  The Court notes that Plaintiff represented to the Court that each Class Member would receive approximately $270, which she apparently calculated by dividing the Gross Settlement Amount by the number of Class Members without making any deductions at all.  (Final Approval Mem. at 9.)  This is a particularly egregious error in light of the fact that KCC provided to Plaintiff's Counsel a more reasonable estimate of the expected value of the individual settlement payments.  (*See* Morrison Decl. ¶ 9.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:16-cv-00059-JLS-KES							Date: June 26, 2018
Title: Maria Chona Rodriguez v. El Toro Medical Investors Limited Partnership et al.

actions.  (*See id.* at 18–19.)  *Cf. Vizcaino*, 290 F.3d at 1048 (finding case "extremely risky" when, among other factors, plaintiffs lost twice in district court and there was an absence of supporting precedent); *Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1209 (C.D. Cal. 2014) (justifying upward departure because of certification of an "unprecedented" class and the interlocutory appeal of class certification order).  Therefore, this factor does not favor an upward departure from the benchmark.

      Plaintiff argues that the third factor, the skill required and the quality of the work, favors a 33% award based on Counsel's success in "convinc[ing] Defendant that Class Counsel could potentially prevail on legal issues regarding liability, obtain class certification for all individuals through trial, and overcome difficulties in proof as to monetary relief."  (Fee Mem. at 4.)  Further, Plaintiff states that "Class Counsel displayed skills consistent with those that might be expected of attorneys of comparable experience."  (*Id.*)  However, Plaintiff has not identified any novel or complex legal or factual issues that required exceptional advocacy; rather, this case was narrowly limited to the FCRA claims, which were "substantially less complex" than the issues counsel faced in *Vizcaino*, where the Ninth Circuit upheld the district court's award of 28% of the common fund.  *McKenzie v. Fed. Exp. Corp.*, No. CV 10-02420 GAF (PLAx), 2012 WL 2930201, at *9 (C.D. Cal. July 2, 2012).  In short, the Court does not find that a performance "consistent with … that [which] might be expected of attorneys of comparable experience" justifies an upward departure from the 25% benchmark.  (*See* Fee Mem. at 4.)

      Finally, the Court notes that Class Counsel took this case on a contingent basis and invested a total of 373.75 hours prosecuting and resolving the case.  (Blumenthal Decl. ¶ 8, Doc. 90-2.)  "Courts have long recognized that the attorneys' contingent risk is an important factor in determining the fee award and may justify awarding a premium over an attorney's normal hourly rates."  *Monterrubio*, 291 F.R.D. at 457 (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994)).  However, standing alone this factor does not justify an upward departure of the benchmark.  *See, e.g.*, *Scott v. HSS Inc.*, No. 8:14-CV-01911-JLS (RNB), 2017 WL 7049524, at *6 (C.D.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  8:16-cv-00059-JLS-KES                                              Date: June 26, 2018
Title:  Maria Chona Rodriguez v. El Toro Medical Investors Limited Partnership et al.

Cal. Dec. 18, 2017) (*citing Clayton v. Knight Transp.*, 1:11-cv-00735-SAB, 2013 WL 5877213, at *8 (E.D. Cal. Oct. 30, 2013)).

The Court concludes that, on balance, the *Vizcaino* factors counsel against an upward departure, and the Court finds that an award of 25% of the common fund, or $168,750, is reasonable in this case.

### B.     Lodestar Cross-Check

Next, the Court compares Class Counsel's lodestar as a "cross-check" on the reasonableness of a percentage-based fee award.  *See Bravo v. Gale Triangle, Inc.*, No. CV-16-03347-BRO (GJSx), 2017 WL 708766, at *17 (C.D. Cal. Feb. 16, 2017) (*citing Vizcaino*, 290 F.3d at 1050)).  Here, Class Counsel assert they have spent a total of 373.75 hours litigating this action and provided records of their time spent.  (Blumenthal Decl. ¶ 8; Timesheets at 18, Ex. 3 to Blumenthal Decl., Doc. 90-2.)  Eight attorneys worked on this case, using billing rates that ranged between $395 and $795 per hour.  (Timesheets at 18.)  Specifically, three partners billed at rates of $695, $750, and $795 per hour.  One associate billed at $575 per hour, three at $475 per hour, and one at $395.  One paralegal also billed 4.1 hours at $175 per hour.  Using the above figures, Class Counsel calculated a collective lodestar of $217,240.25.  (*Id.*)

In conducting the lodestar cross-check, the Court considers whether counsel's hourly rates and expenditure of time were reasonable.  *Cotton v. City of Eureka*, *Cal.*, 889 F. Supp. 2d 1154, 1166, 1176 (N.D. Cal. 2012).  As to Class Counsel's hourly rates, in reviewing awards in this District in similar cases for attorneys at small firms, like Blumenthal, Nordrehaug, & Bhowmik, the Court finds that Class Counsel's rates "generally exceed market rates."  *Rivas v. ESA Mgmt. LLC*, No. 14-CV-5767 DSF (ASX), 2016 WL 7647670, at *2 (C.D. Cal. Apr. 28, 2016) (noting that "Employment and Labor" partners working in firms with 1 to 50 attorneys charge a median of $385.00, and partners at larger firms charge a median of $516.44); *Luna v. Universal City Studios, LLC*, No. CV 12-9286 PSG (SSX), 2016 WL 10646310, at *8 (C.D. Cal. Sept. 13, 2016).  Moreover, although Plaintiff provided examples in which other courts granted Class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:16-cv-00059-JLS-KES                                             Date: June 26, 2018
Title: Maria Chona Rodriguez v. El Toro Medical Investors Limited Partnership et al.

Counsel percentage-of-recovery awards that exceeded 25%,[6] she did not provide any cases in which Class Counsel's requested rates were deemed reasonable. (*See* Fee Mem. at 17.) For example, in *Dobrosky*, the court found that rates of $550 (Bhowmik), $595 (Nordrehaug), and $695 (Blumenthal) were reasonable. *See Dobrosky v. Arthur J. Gallagher Service Co., LLC*, CV 5:13-0646 JGB (SPx), Doc. 84 at 12 (C.D. Cal. June 20, 2016) (citing to *Dobrosky* Blumenthal Decl., Doc. 82-1)). Therefore, the Court cannot conclude that the hourly rates requested here are reasonable.

      Moreover, the Court finds that the amount of time spent on this case, 373.75, hours, is somewhat excessive in the circumstances. This case concerns the lawfulness only of El Toro's background authorization form, and although it has been litigated for just over two years, the sole substantive motion was El Toro's motion to dismiss. *Cf. Bravo*, 2017 WL 708766, at *18 (finding 243.5 hours reasonable in a wage and hour class action that was litigated for two years). Moreover, some routine, administrative, and easily delegable tasks were billed at relatively high rates. For example, Nordrehaug billed $750 per hour for tasks such as "prepar[ing] the complaint for filing, drafting the summons and civil cover sheet," "prepar[ing] documents for service," and "filing, serving, and prepar[ing] chambers copies." (*See* Timesheets at 2, 17.) Bhowmik billed $695 per hour for drafting discovery, researching mediators, and booking his travel. (*Id.* at 5, 6, 14.) Further, many of Blumenthal's entries are "so vague as to prevent an analysis of reasonableness," especially in light of his $795 requested rate. (*See* Timesheets at 11, 13, 14 (displaying entries such as "review docs and law" or "review file").) *Rivas*, 2016 WL 7647670, at *2. These considerations cast doubt on the reasonableness of the hours billed and the overall lodestar total. *See Scott*, 2017 WL 7049524, at *8.

---

      [6] The Court also notes that in this action and in *Dobrosky*, Class Counsel represented that they were awarded 30% of the common fund in *McPhail v. First Command*, 05-cv-179 (IEG), Doc. 273 (S.D. Cal. March 30, 2009). However, Class Counsel's fee award in *McPhail* was, in fact, only 22.37% of the common fund after deduction of litigation expenses. *Id.* at 1. This is yet another egregious error given that the *McPhail* court specifically clarifies the breakdown of its 30% award between fees and costs. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:16-cv-00059-JLS-KES                                     Date: June 26, 2018
Title: Maria Chona Rodriguez v. El Toro Medical Investors Limited Partnership et al.

Accordingly, although the 25% benchmark results in a negative lodestar multiplier of approximately 0.78, Class Counsel has not justified the reasonableness of their rates or the hours expended. Moreover, "as the Court determined above, while the result achieved was favorable, it was not exceptional and the amount of skill required and the quality of the representation [do] not support an upward adjustment of the Ninth Circuit's twenty-five percent benchmark." *Bravo*, 2017 WL 708766, at *18.

Therefore, no upward adjustment from the benchmark is appropriate in this case. The Court GRANTS Plaintiff's request for attorneys' fees, but amends the amount of the award to a benchmark 25% award for a total of $168,750.

### VI.   LITIGATION COSTS

Plaintiff requests the Court to approve the reimbursement of $19,167.03 in litigation expenses and costs, which is slightly less than the amount estimated in the Settlement Agreement. (Fee Mem. at 18; *see* SA § III(B)(2).) "Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2008). Class Counsel have documented their expenses incurred in court filing fees, depositions, travel, research, and mediation fees. (*See* Blumenthal Decl. ¶ 9; Timesheets at 18–19.) The Court finds the various expenses adequately documented and reasonable.

Accordingly, the Court GRANTS the Motion as to Plaintiff's request for litigation costs.

### VII.   CLASS REPRESENTATIVE ENHANCEMENT AWARD

Plaintiff seeks a class representative enhancement award of $10,000. (Fee Mem. at 18–19.) Service awards are "discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:16-cv-00059-JLS-KES                                          Date: June 26, 2018
Title: Maria Chona Rodriguez v. El Toro Medical Investors Limited Partnership et al.

willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000)). "To assess whether an incentive payment is excessive, district courts balance 'the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment.'" *Monterrubio*, 291 F.R.D. at 462 (quoting *Staton*, 327 F.3d at 977). Courts "must 'evaluate [such] awards individually' to detect 'excessive payments to named class members' that may indicate 'the agreement was reached through fraud or collusion.'" *Id.* (quoting *Staton*, 327 F.3d at 975, 977).

      Here, Plaintiff asserts that she assisted Class Counsel by "providing them documents and answering their questions." (Rodriguez Decl. ¶ 3, Doc. 92-3.) She also states that she communicated with her attorneys regarding important case developments, though she did not attend the mediation. (*Id.* ¶¶ 6–7.) In total, Plaintiff estimates that she spent between 40 and 50 hours working on the case. (*Id.* ¶ 8.) Plaintiff also points to the retaliatory and reputational risk she faces in bringing a lawsuit against an employer, (Fee Mem. at 19), a concern that many courts have recognized as reasonable. *See Campbell v. First Inv'rs Corp.*, No. 11-CV-0548 BEN (WMC), 2012 WL 5373423, at *8 (S.D. Cal. Oct. 29, 2012). The Court therefore finds that granting approval of a service award is reasonable and appropriate under the circumstances.

      However, the requested incentive award is unreasonably high. As noted, the average individual recovery for Participating Class Members is $185. Plaintiff's requested award would be nearly 54 times that amount. "[C]oncerns over potential conflicts may be especially pressing where, as here, the proposed service fees greatly exceed the payments to absent class members." *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013). Moreover, even accepting as true her assertion of 40 to 50 hours, a $10,000 award would compensate her time at a rate of $200–$250 per hour for tasks such as "mak[ing] [herself] available by telephone … ." (Rodriguez Decl. ¶ 7.) Courts often reduce incentive awards where named plaintiffs have not adequately justified the value of their role in the litigation, for example, where they are not deposed, do not testify, and do not actually participate in a mediation. *Lopez v. Bank*

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:16-cv-00059-JLS-KES                                        Date: June 26, 2018
Title: Maria Chona Rodriguez v. El Toro Medical Investors Limited Partnership et al.

*of Am., N.A.*, No. 10-CV-01207-JST, 2015 WL 5064085, at *9 (N.D. Cal. Aug. 27, 2015).

Upon weighing the services rendered, the risks undertaken, and the proportion of the requested award relative to the settlement amount and individual class payments, the Court finds a service award of $2,000,[7] or 0.2% of the Gross Settlement Amount, is reasonable under the circumstances. *Cf. Scott*, 2017 WL 7049524, at *8–*9 (awarding $4,000 where the named plaintiff spent upwards of 100 hours working on the case). This award is both more appropriately aligned with the average value of the individual settlement payments and is reasonable as a percentage of the overall value of the settlement to the Class. *See In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 535 (E.D. Pa. 1990) (approving incentive payments that constituted 0.18% of the settlement amount); *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *37 (N.D. Cal. Apr. 1, 2011) (approving incentive payments comprising 0.45% of the total settlement amount).

Accordingly, Plaintiff is awarded a service payment of $2,000.

## VIII. <u>CONCLUSION</u>

The Court finds the settlement to be fair, adequate, and reasonable, and accordingly GRANTS final approval of the Settlement Agreement. The Court also GRANTS IN PART Plaintiff's motion for attorneys' fees, costs, and service payments. The Court awards Class Counsel $19,167.03 in litigation costs and $168,750 in attorneys' fees, based on an award of 25% of the Gross Settlement Amount. The Court also awards a service payment of $2,000 to Rodriguez. Finally, the Court awards $22,450 in claims administration services and expenses to KCC. Distribution of the Gross Settlement

___

[7] Class Counsel noted at oral argument that some district courts have stated that $5,000 is a "presumptively reasonable" enhancement award. *See Lopez*, 2015 WL 5064085, at *9. Those decisions are not binding on this Court, and, in any event, the Court finds that a better approach is to consider the particular circumstances of the individual case to determine the reasonableness of a proposed award.

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:16-cv-00059-JLS-KES                      Date: June 26, 2018

Title: Maria Chona Rodriguez v. El Toro Medical Investors Limited Partnership et al.

Amount shall be made in accordance with the method outlined in the Settlement Agreement.

       The concurrently filed proposed judgment shall be entered forthwith.

                                                      Initials of Preparer: tg